## Wier *versus* Myers.

An action at law will not lie against the committee of a lunatic, to recover compensation for professional services, rendered by the plaintiff, as an attorney, in conducting the proceedings in lunacy; the court that has the final settlement of the committee's accounts, has the exclusive control of such expenditures.

But the estate, in the hands of the committee, is liable for such services.

ERROR to the Common Pleas of *Indiana county*.

This was an action of *assumpsit*, by John Myers against Hugh W. Wier, committee of the person and estate of James Wier, a lunatic, to recover the sum of $68.73, for professional services rendered by the plaintiff, as an attorney, in conducting the proceedings in lunacy.

The parties agreed upon a case stated, in the nature of a special verdict, with the right to sue out a writ of error, wherein the following facts were stated for the opinion of the court:—

Some time prior to the 26th June 1851, Nancy M. Wier, a relative by marriage of James Wier, retained the plaintiff to commence and manage the proceedings in lunacy, in relation to the said James Wier; and paid him $5, as a retaining fee. The plaintiff, accordingly, on the 26th June 1851, presented the petition of the said Nancy M. Wier to the Court of Common Pleas

[Wier *v.* Myers.]

of Indiana county, for a commission *de lunatico inquirendo*, and conducted the proceedings to their termination, which resulted in the appointment of the defendant as the committee of the person and estate of the said James Wier.

The court below gave judgment for the plaintiff on the case stated, and delivered the following opinion :—

" In this case, the declaration is against the lunatic by his committee, and the questions are, whether the estate of a lunatic is liable for the professional services of the plaintiff, in conducting the application to a successful issue ; and if so, whether the present action of *assumpsit* is the proper remedy.   By the common law, the king was the guardian and protector of idiots and persons of unsound mind.   The exercise of that authority was committed to the lord chancellor, by special commission.   By the Constitution of Pennsylvania that power is conferred by the people on the Supreme Court and Courts of Common Pleas, and has, from time to time, been regulated by statute, so far as regards the details and the question of costs ; but nothing has been said in regard to the fees of solicitors or counsel in conducting the proceedings.   It is left to be determined as. a common law question.   That a chancellor allowed it in England, wherever he had the control of a fund belonging to a lunatic, seems to have been well settled : *Shelford on Lunacy* 177.

" Upon the principles of justice and right the law ought to be so, and in the opinion of this court, is so.   We are to view things as they really exist, and try to mould our legal proceedings, so as to do substantial right.   In contemplation of law, the lunatic is the helpless ward of the court.   He is powerless to do anything himself.   Everything he does is in law void.   He can do nothing even to save himself.   He is, in fine, a mere creature, destitute of mind, incapable of managing either himself or his property, and unable even to employ the services of those who can take care of him.   He cannot even employ counsel, to place himself and his estate under the protection of the law.   The Court of Common Pleas, although his constitutional guardian, cannot act by their own mere motion.   The statute directs differently.   It cannot be doubted, that professional skill is required in the conduct of the proceedings.   They are for the benefit of the lunatic. Without them, he might become as destitute of the means of subsistence, as he is of mental light.   He cannot do it himself.   It is an act of humanity and charity for any one to act as his friend. That friend may be inexpert in the law, and incapable of taking the first step properly.   The practice of our courts, and the structure of our judicial system, require form, and accuracy, and professional aid.   Is this disinterested friend to be responsible pecuniarily for this ?   Is he not in the condition of an honest prosecutor who serves the public by prosecuting a criminal ?   If

[Wier *v.* Myers.]

he acts in good faith, he ought not to be chargeable. Professional skill cannot be had without compensation; the law does not expect it, and would be unreasonable, if it did. What, then, is to be done? If the fund is not liable, or ought not to be, and professional skill cannot be had without a liability somewhere, and the court cannot act without professional preparation, then deplorable indeed would be the condition of the unfortunate lunatic, and useless would be · the theoretical guardianship of a chancellor or court. I cannot, therefore, doubt but that the entire costs of the proceedings, including counsel fees, are properly chargeable upon the estate of the lunatic: 10 *Harris* 469.

" The question that in my mind created the greatest doubt was, whether the action of *assumpsit* could be maintained, or whether the allowance ought not to be made by the court, when the proceedings were determined. The Court of Chancery, however, in acting on questions of lunacy, does not sit as a court of equity, but of law, and dispenses legal rights alone; and it may well be doubted whether the court, in such a case, has any power to go beyond what is strictly costs, and allow professional fees, however clear the right may be. Be this as it may, however, the action of *assumpsit* is a very plastic remedy, and lies in most cases where a right to receive money from another exists, and there is no other special remedy.

" For these reasons, the court think the plaintiff is justly entitled to compensation from the estate of the lunatic, and that the present action may be supported, and enter judgment for the plaintiff for the amount mentioned in the stated case, with costs."

The defendant, thereupon, removed the cause to this court, and here assigned the same for error.

*Whites* and *Coffey*, for the plaintiff in error.—We concede that the courts have control over the costs in lunacy; but we deny that the compensation of counsel, for conducting the proceedings, are costs within the meaning of the Acts of Assembly: Lynch *v.* Wood, 1 *Dall.* 310; Sebring *v.* Ward, 4 *W. C. C. R.* 546; *Brightly on Costs* 15; Musser *v.* Good, 11 *S. & R.* 248; Act 13th June 1836, §§ 1, 10, 11, *Brightly's Purd.* 550; Act 16th April 1849, § 2, *Id.* 551.

But whether counsel fees are " costs" within the meaning of the law, it seems to us clear that they cannot be recovered in *assumpsit* against the committee. If the court possesses the power claimed, it certainly can only be exercised, in the method fixed by the Act of Assembly, by a decree in the proceedings. Admitting that the services are rendered for the benefit of the lunatic, they are not rendered at his instance and request, and raise no implied promise to pay—why, then, should he be compelled to pay the costs of a suit at law, when the counsel can secure his com-

[Wier *v.* Myers.]

pensation by a simple application to the court, when the decree is made respecting costs? If the counsel neglect to ask the court to include his compensation in the decree for costs, and the court forgets to do so, is it any fault of the lunatic? Should he be compelled to pay the penalty of their default, in the shape of costs, in an action of *assumpsit?* We think this court will not so hold the law.

*Banks*, for the defendant in error.—There can be no doubt but that, in England, the attorney or solicitor is entitled to his compensation out of the estate of the lunatic: Clark's Case, 10 *Harris* 466; *Shelford on Lunacy* 175, 177; Act 16th April 1849.

PER CURIAM.—We agree entirely with the views expressed by the learned judge of the Common Pleas in his opinion on this case, except in relation to the form of the remedy. We think that the officer of the court, the committee of the lunatic, ought not to be subject to action for any of the expenses of the process by which the lunatic and his estate is put into the custody of the law. All those expenses ought to be carefully supervised by the court, and, considering the helpless condition of the lunatic, none ought to be allowed, except such as are manifestly just and moderate. If the committee is liable to action, he may be sued anywhere, and thus put to very unjust inconvenience and expense under the forms of law. The court that has the final settlement of the committee's account ought to have the control of such expenditures.

Judgment reversed and record remitted.