## O'Connor's Estate.

*Weak-minded persons — Debts — Support of dependent father — Acts of June 13, 1836, and May 28, 1907.*

1. Under the Acts of June 13, 1836, P. L. 589, and May 28, 1907, P. L. 292, the Court of Common Pleas has power to direct the debts of a weak-minded person to be paid, and also to direct an allowance from his estate for a dependent father, with whom the son had maintained the family relation both before and after his incapacity had been established.

2. The duties, in respect to the maintenance of a member of a deficient person's family, imposed upon the committee appointed pursuant to the Act of 1836 or upon a guardian appointed under the Act of 1907, are identical.

3. Persons whom a lunatic, when sane, requested to live with him permanently as members of his household, and who remain in such relation after his lunacy, constitute members of his family entitled to support out of his estate.

Petition to pay indebtedness of weak-minded person. C. P. Schuylkill Co., Nov. T., 1924, No. 549.

BERGER, J., March 16, 1925.—This is a petition by Thomas F. Muldowney, guardian of Joseph O'Connor, found to be a weak-minded person pursuant to the provisions of the Act of May 28, 1907, P. L. 292, as amended by the Act of April 15, 1915, P. L. 124, for an order authorizing the payment of an indebtedness of $710, alleged to be due by his ward to Patrick O'Connor, his father; for authority to make a monthly allowance out of his ward's estate for the maintenance of his father, Patrick O'Connor; and for authority to

expend monthly a requisite sum for clothing and incidentals, according to his ward's needs.

On hearing of the petition, it was shown that the petitioner was appointed guardian of Joseph O'Connor, Nov. 3, 1924. The estate of his ward at present consists of approximately $2800 in cash and two lots of ground, situate in Plainfield, New Jersey, valued at approximately $800. Joseph O'Connor is an ex-service man, about thirty-one years of age. The money in his guardian's custody represents the accumulations of monthly payments of $157.50 made by authority of the War Risk Insurance Act, and the amendments thereto, as compensation and insurance. These payments will continue. There is also an expectancy soon to be realized of approximately $1900, in the nature of adjusted compensation.

Joseph O'Connor is unmarried, and before his service in the United States Army made his home with his father, now seventy-five years of age or upwards, in Cass Township, Schuylkill County, Pennsylvania, and always contributed a proper part of his earnings to the maintenance of his parents and of the family home. His mother died while he was in the service. After his discharge from the army, and while he was in vocational training, the Veterans' Bureau acknowledged the dependency of the father upon the son and added $30 per month to his allowance for the support of his father. The dependency of the father upon the son continues. During the period of vocational training Joseph O'Connor's mind became so unstable that he made no progress at his work, dissipated his allowance and caused the expenditure by his father of the sum of $710, now claimed by him as a debt, for his proper maintenance. After he had been adjudged a weak-minded person he became, and now remains, an inmate of the United States Veterans' Hospital No. 49, 24th Street and Gray's Ferry Road, Philadelphia, Pennsylvania, where he is being maintained at the expense of the Federal Government, save what is required for his clothing and necessary incidental expenses, which the guardian is required to supply out of his ward's compensation and insurance. It is established by the evidence that $45 monthly is necessary for a proper maintenance of the weak-minded person's father, and that a sum not exceeding, at present, $30 monthly, is required to be expended by the guardian for the clothing of his ward and incidental expenses essential to his comfort.

The 6th section of the Act of May 28, 1907, P. L. 292, for the protection of feeble-minded persons, gives to guardians appointed under the act the same powers, and subjects them to the same duties, as a committee of lunacy, under the Act of June 13, 1836, P. L. 589. The court, by the same section, is expressly given full power over the guardian in directing an allowance for his ward and for the support and maintenance of his wife and minor children, but is silent respecting the power of the court to direct an allowance for the maintenance of a dependent parent or other person in a family relation to the feeble-minded person. The 20th section of the Act of 1836 requires the committee of a lunatic to apply to court from time to time for authority to apply so much of the income of his ward as shall be necessary to the payment of his just debts and engagements, his own support and maintenance and that of his family, and under the 21st section of the act resort may be had to the principal when the income is insufficient. In the construction of the 20th section of the act it has been held that persons whom the lunatic when sane requested to live with him permanently as a member of his household, and who remain in such relation after his lunacy, constitute members of his family entitled to support out of his estate: Hambleton's Appeal, 102 Pa. 50; Halsey's Appeal, 120 Pa. 209; Tarr's Estate, 10 Pa. Superior Ct. 554,

O'Connor's Estate.

557; Mitchell *v.* Spaulding, 20 Pa. Superior Ct. 296, 299, affirmed in 206 Pa. 220; Komarnicki's Case, 3 D. & C. 603. It is entirely clear that at the time Joseph O'Connor was declared a feeble-minded person the family relation existed between him and his father, and if it had not, his statutory obligation to assist in the maintenance of his father would justify an order of support out of his estate, for the duty in respect to the maintenance of a member of a deficient person's family, imposed upon a committee appointed pursuant to the Act of 1836, or upon a guardian appointed under the Act of 1907, are identical. The prayer of the petition will, therefore, be granted.

## Order.

And now, March 16, 1925, Thomas F. Muldowney, guardian of Joseph O'Connor, a weak-minded person, is hereby ordered and directed to pay to Patrick O'Connor, the father of Joseph O'Connor, the sum of $710, in full of all indebtedness owing by the said Joseph O'Connor to his father, and also to pay to the said Patrick O'Connor, as of Feb. 22, 1925, the sum of $45 monthly for his support and maintenance, and he is further authorized to pay out of the said estate for clothing for the said Joseph O'Connor, his ward, and incidental allowances necessary for his comfort, a sum not exceeding $30 per month, dating from March 16, 1925. The payments made in pursuance of this order to be duly accounted for according to law. Costs of this proceeding to be paid out of the estate.

From M. M. Burke. Shenandoah. Pa.